IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KAWALJEET KAUR,

    Petitioner,

v.                                                                                 No. 2:26-cv-00285-KG-KK

WARDEN,
OTERO COUNTY PROCESSING CENTER, et al.,

    Respondents.

## MEMORANDUM OPINION AND ORDER

Ther matter is before the Court on Kawaljeet Kaur's Petition for a Writ of Habeas Corpus, Doc. 1, and the Government's Response, Doc. 9. Because her challenge presents a purely legal question, the Court declines to hold a hearing, *see* 28 U.S.C. § 2243, and grants her petition for the reasons below.

*I.*    *Background*

Ms. Kaur, a native and citizen of India, "fled India because she was persecuted and tortured" there "on account of her political opinion." Doc. 1 at 4. She arrived in the United States "on or about" June 10, 2023 "near the border in Lukeville, Arizona." *Id.* Upon arrival, Ms. Kaur "was briefly detained" and "subsequently released from ICE custody on conditional parole." *Id.* She was "placed in removal proceedings" and applied for asylum. *Id.* at 4–5.

In 2025, an immigration judge denied Ms. Kaur's asylum claim. *Id.* at 5. Ms. Kaur's appeal of that decision remains pending with the Board of Immigration Authorities ("BIA"). *Id.* "At all times," Ms. Kaur "has complied with her conditions of release" and "obeyed all applicable federal and state laws." *Id.*

1

On January 5, 2026, Ms. Kaur "went to report for her scheduled ICE check-in" when ICE arrested her. *Id.* at 5–6. She "remains detained" at the Otero County Processing Center in Chaparral, New Mexico. *Id.* She argues that her detention violates the Immigration and Nationality Act ("INA") and the Fifth Amendment's Due Process Clause. *Id.* at 3. She seeks release or, in the alternative, a bond hearing in front of a neutral adjudicator. *Id.* at 26.

## II.     Standard of Review

A petition for a writ of habeas corpus seeks "release from unlawful physical confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973). Habeas corpus review is available under § 2241 if a noncitizen is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Zadvydas*, 533 U.S. at 687.

## III.    Analysis

For the reasons below, the Court finds that (A) 8 U.S.C. § 1226 governs Ms. Kaur's detention, (B) her detention violates her right to due process, and (C) the proper remedy is a bond hearing where the Government bears the burden of proof.

### A.     Section 1226 governs Ms. Kaur's detention.

The INA establishes distinct detention regimes depending on whether a noncitizen is "seeking admission" to the United States. *See Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018). Section 1225(b)(2)(A) applies to "applicant[s] for admission" who are "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." The "provision mandates detention and affords no bond hearing." *Pu Sacvin v. De Anda-Ybarra*, 2025 WL 3187432, at *1 (D.N.M.) (Gonzales, J.). By contrast, § 1226(a) authorizes the arrest and detention, "on a warrant," of noncitizens "pending a decision on whether [they are] to be

2

removed." Noncitizens "detained under this second detention regime are entitled to individualized bond hearings at the outset of detention." *Id.* at *1.

Consistent with the overwhelming majority of district courts to consider the issue and this Court's prior findings, the Court concludes that § 1226 governs here. *See Barco Mercado v. Francis*, 2025 WL 3295903, at *13 (S.D.N.Y.) (collecting 362 district-court opinions nationwide and noting that challengers prevailed in at least 350 of them, in decisions by over 160 judges across fifty courts); *Pu Sacvin*, 2025 WL 3187432 (Gonzales, J.); *Danierov v. Noem*, 2026 WL 45288 (D.N.M.) (Gonzales, J.). Section 1225(a)(1) defines an "applicant for admission" as a noncitizen "who has not been admitted *or* who arrives in the United States." In contrast, § 1225(b)(2)(A)'s detention mandate applies only to noncitizens "*seeking* admission" (emphasis added). Noncitizens "seeking admission" are those who have not "effected an entry" into the United States. *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020). Noncitizens "who entered the country years earlier" are not "seeking admission," and therefore fall under § 1226 rather than § 1225(b)(2)(A). *Pu Sacvin*, 2025 WL 3187432, at *3. The Court acknowledges the recent Fifth Circuit decision holding that "[w]hile [noncitizens] remain applicants" for admission, "they are...seeking admission." *Buenrostro-Mendez v. Bondi*, --- F.4th ----, 2026 WL 323330, at *5 (5th Cir.). The Tenth Circuit has not yet addressed the question.

Under this framework, § 1226 governs Ms. Kaur's detention. Ms. Kaur entered the United States in 2023 and has lived here since. Doc. 1 at 3–4. ICE arrested her three years after her initial entry and did not apprehend her at or near the border. *Id.* Accordingly, § 1225's mandatory detention provision "does not apply" because Ms. Kaur "already effected an entry" into the United States by living here for years. *Nava Hernandez*, 2025 WL 2996643, at *5; *see also Salazar*, 2025 WL 2676729, at *4. Indeed, the Government concedes that the facts of this

3

case are "substantially similar" to those in *Patel v. Noem,* 2026 WL 103163 (D.N.M.), where this Court concluded that § 1226 applied. Doc. 9 at 2.

      **B.**      ***Ms. Kaur's detention violates her right to due process.***

Courts analyze due process claims in two steps: first, whether there exists "a protected liberty interest under the Due Process Clause," and second, whether the procedures used to deprive that interest "accord with the Constitution." *Domingo v. Castro*, 2025 WL 2941217, at *3 (D.N.M.). To start, Ms. Kaur has a protected liberty interest. Once released from immigration detention, noncitizens acquire "a protectable liberty interest in remaining out of custody on bond." *Danierov*, 2026 WL 45288, at *2. Over the past three years, Ms. Kaur's freedom has allowed her "to do a wide range of things," including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

Ms. Kaur was also entitled to procedural safeguards before she was detained. In determining what process is due, courts consider (1) "the private interest" affected; (2) "the risk of erroneous deprivation" through the procedures used and the probable value of additional safeguards; and (3) "the Government's interest," including the fiscal and administrative burdens of additional procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Here, Ms. Kaur's private interest in remaining free from detention is substantial. "Freedom from imprisonment...lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). There is also a significant risk of erroneous deprivation. Although DHS may revoke release "at any time," courts require "a material change in circumstances as to whether the noncitizen poses a danger to the community or an unreasonable risk of flight" before it does so. *Danierov*, 2026 WL 45288, at *2. Here, no assessment was

made as to whether any material facts had changed before Ms. Kaur was redetained, creating a substantial risk of erroneous deprivation of her liberty interest. Doc. 1 at 4–6.

Finally, the Government's interest in detaining Ms. Kaur without a bond hearing is limited. Although the Government has a legitimate interest in ensuring her appearance at future immigration proceedings, the record demonstrates that detention has not been necessary to serve that interest. Since the initiation of removal proceedings in 2023, Ms. Kaur has complied with all imposed conditions. *See* Doc. 1 at 6. She has consistently appeared for her immigration hearings and has pursued relief through an application for asylum. *Id.* Moreover, the administrative burden of providing a bond hearing is minimal. *See Danierov*, 2026 WL 45288, at *2 (the "cost of providing a bond determination is not terribly burdensome").

### C.   *The remedy is a bond hearing where the Government bears the burden of proof.*

The proper habeas remedy is a prompt bond hearing at which the Government must prove, by clear and convincing evidence, that Ms. Kaur is a flight risk or danger to the community. Although "under normal circumstances, the burden" at a § 1226 hearing "is on the noncitizen" to show that detention is unwarranted, Ms. Kaur's "unlawful[] detention[] in violation of [her] constitutional rights" shifts that burden to the Government. *Salazar*, 2025 WL 2676729, at *6. The Court joins most other district courts in concluding that a noncitizen's "strong private interest in being free from civil detention" outweighs the Government's comparatively minimal burden to justify custody. *Id.* (collecting cases).

## IV.   Conclusion

The Court therefore grants Ms. Kaur's petition, Doc. 1. The Court orders that the Government provide her with a bond hearing under § 1226(a) before an immigration judge within seven days of this Order. At that hearing, the Government must justify Ms. Kaur's

continued detention by clear and convincing evidence. If the Government fails to provide a bond hearing within that timeframe, it must release her. The Court further orders the Government to file a status report within ten days of this Order confirming that it has either provided Ms. Kaur with a bond hearing or released her.

/s/Kenneth J. Gonzales_____
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.